## W. L. McCord v. Elizabeth Hames et al.

### Decided February 4, 1905.

**1.—Superior Legal Title—Descent—Conveyance—Recovery Back of Land Sold.**

Where a deed of land reserves a vendor's lien to secure the purchase money the superior legal title remains in the vendor, and upon his death descends to his heirs, and they may, the purchase money remaining unpaid, convey such title to an assignee of the purchase money note, and the assignee may, in default of payment of the purchase money, recover the land from the vendee.

**2.—Same—Equitable Relief—Foreclosure of Lien.**

Where the suit is to recover the land or in the alternative to foreclose the vendor's express lien, and for any reason it would be inequitable for the vendor, or those claiming through him, to recover the land, a court of equity will not permit him to do so, but will confine his recovery to a judgment for the unpaid purchase money, with foreclosure of the lien.

**3.—Same—Rescission—Waiver.**

To authorize a rescission of the sale by the vendor and a recovery back of the land he must not delay too long in insisting upon the payment of the purchase money as it falls due, or he will be considered as having waived the default. He must not treat the contract as still subsisting, or do any act which may be construed into its affirmance.

**4.—Same—Recovery of Land Denied.**

Where the holder of the purchase money notes more than six years after their maturity accepted renewal notes and also payments made thereon during three or four years following, and sought to have such notes allowed as a claim against the vendee's estate, and the land, which had become the homestead of the vendee, had been very largely enhanced in value by improvements placed thereon, and no notice of intention to rescind was manifested or given until the filing of the suit, about three years after the holder of the notes had acquired the legal title by quitclaim from the heirs of the vendor, there was an affirmance of the contract of sale, or such a state of facts as would render it unconscionable to permit a recovery of the land.

**5.—Same—Tender of Unpaid Purchase Money.**

Where the amount of the unpaid purchase money was not and could not, from the information possessed by the defendant vendees, have been known to them, and in such suit they pleaded payment of the notes, but offered in the event any amount was found to be due to pay it within such time as the court should require, it was not indispensable that a tender of such amount should have been made in open court in order to defeat plaintiff's recovery of the land.

**6.—Same—Estoppel—Resisting Payment of Notes.**

Where the holder of the vendor's lien notes sought in the administration of the estate of the vendee of the land sold to establish the notes as a claim against the estate and have the lien enforced, and the widow and children resisted on the ground that the notes had been paid and that the claim was not presented in due time, this did not estop them from asserting in this action, brought by such holder, their right to pay off the purchase money debt and thus defeat plaintiff's right to rescind and to recover the land by virtue of the superior legal title.

**7.—Same—Same.**

Nor were they so estopped by reason of the fact that, in an action brought by plaintiff in the District Court to establish the debt and foreclose the lien, they objected on the ground that administration was pending on the estate, and plaintiff thereupon took a voluntary nonsuit.

**8.—Same—Payments by Decedent's Estate.**

Where the land became the homestead of the vendee and was occupied as such by his widow and children after his death, and they turned over products of the land to the holder of the purchase money notes, who was the administrator of the vendee's estate, with directions to apply the proceeds as payment on the notes, such proceeds were not assets of the estate, and the administrator's unauthorized action in applying them to other claims against the estate did not defeat the right of the widow and children to have such proceeds credited on the notes, which had become the property of such administrator by gift after their maturity.

**9.—Assignment of Error—Statement Necessary in Briefs.**

An assignment of error will not be considered where it is not followed in preparing the briefs, by a statement of the record in explanation and support of the proposition asserted.

**10.—Same—Bill of Exceptions—Exclusion of Evidence.**

An assignment complaining of the exclusion of evidence will not be considered where the bill of exceptions taken to such exclusion is not approved by the trial judge.

Appeal from the District Court of Rockwall. Tried below before Hon. J. E. Dillard.

*Kearby & Kearby* and *G. W. Morris,* for appellant.—1. Where the deed expressly reserves the vendor's lien to secure the notes, the transferee thereof, who holds a proper transfer of the superior title of the original vendor, may upon default in its payment, sue in trespass to try title and recover the land, especially if the amount due is not tendered into court. Farmers Loan & Trust Co. v. Beckley, 93 Texas, 267; Smith v. Farmers Loan & Trust Co., 51 S. W. Rep., 515.

2. The assignee of the purchase money note, the lien being expressly reserved in the deed, has the right to sue for the land, when limitation or when other sufficient technical objection to his right to

foreclose, is plead against his right to foreclose his lien. White v. Cole, 87 Texas, 500.

3. If a plea of limitation or other sufficient technical plea to the foreclosure of the lien be made and the holder of the vendor's lien forced to acquire, at a loss, the superior legal title, the adverse party is estopped from tendering the amount due on the notes and the holder of the lien may bring his suit in trespass to try title for the land. Palmer v. Jackson, 52 Texas, 427.

4. A payment of claims under order of the court in due course of administration is, in the absence of fraud, an ample protection to the administrator. Cameron v. Morris, 83 Texas, 15, 16; Sabinos v. Chamberlain, 76 Texas, 624; Buchanan v. Bigler, 64 Texas, 589; Fortson v. Alford, 62 Texas, 576; Johnson v. Wilcox, 23 Texas, 413.

*L. D. Stroud* and *Word & Charlton,* for appellees.—1. By long delay the vendor waives time as the essence of the contract and loses the right to rescind the sale of the land. Heirs of Reddin v. Smith, 65 Texas, 26; Tom v. Wolhoffer, 61 Texas, 277; Burkitt v. McDonald, 64 S. W. Rep., 694; Moore v. Giesecke, 76 Texas, 543; Scarborough v. Arrant, 25 Texas, 131.

2. Where original vendor expressly reserves a lien to secure unpaid purchase money notes, and subsequently parts with his title to the notes, such vendor holds the superior legal title as a naked trust for the holder of the notes, and upon the death of such original vendor such naked trust so held by him will not descend to his heirs, and the holder of such notes who obtains a quitclaim from such heirs does not obtain the legal title. Douglass v. Blount, 95 Texas, 380; Farmers' Loan & Trust Co. v. Beckley, 93 Texas, 267-274.

3. Appellant has waived its fourth assignment of error, as the same is not followed by any statement. Rule 31 for Courts of Civil Appeals; McCardell v. Henry, 57 S. W. Rep., 908; Brannin v. Dry Goods Co., 30 S. W. Rep., 572.

TALBOT, Associate Justice.—F. Sullivan conveyed to Levi Hames September 20, 1889, the land in controversy, being 124 acres, a part of the E. R. Foster survey, situated in Rockwall County, Texas. The consideration recited in the deed is $1,240, paid and to be paid as follows: One yoke of oxen, delivered at date of deed, valued at $70; one note for the sum of $67.95, due September 29, 1889; one note for $300, due December 15, 1889, payable to the order of R. A. Watson; one note for $360.50, due December 20, 1890, and one note for $432.50, due November 15, 1891. All the notes bore date September 20, 1889, and interest at 10 percent per annum from said date; provided for the payment of 10 percent as attorney's fees; and a vendor's lien on the land conveyed was expressly reserved in the deed to secure the payment of said notes. Hames established the homestead of himself and family on the land shortly after his purchase, and he and his family made valuable improvements thereon, so that its value at the date of the trial of this cause was $4,960. Hames died upon the land in June, 1897, and his family has continued to occupy it as their home. All of the above men-

tioned notes were paid off before the 16th day of December, 1896, except the $67.50 note and the $432.50 note.

Some time prior to December 16, 1896, Sullivan, the grantor in the deed, parted with all of his interest in the notes mentioned, and on said date W. H. Atherton, his son-in-law, being in possession of said notes, called on Levi Hames, surrendered said unpaid notes and secured in renewal thereof the two notes sued on in this suit. Each of the last named notes was for the sum of $352.72, payable respectively on the 1st day of December, 1897 and 1898, and bore interest at the rate of 10 percent per annum from their date, and stipulated for the payment of 10 percent as attorneys' fees if placed in the hands of an attorney for collection. They were payable to the order of W. H. Atherton and his wife, M. A. Atherton, and recited that they were renewals of the old notes, and acknowledged a vendor's lien on the land sued for. At the death of Levi Hames, in June, 1897, he left surviving him seven children, five of whom were minors, and his widow, Elizabeth Hames, but left no property subject to administration, except a mare and colt, subsequently sold for $40.50. W. H. Atherton was appointed temporary administrator of Levi Hames' estate the 30th day of August, 1897, and afterwards, on March 15, 1898, he was appointed permanent administrator. On March 14, 1898, he returned to the County Court an appraisement and inventory, embracing said 124-acre homestead tract. Levi Hames at his death was insolvent. The widow and children remained in the homestead, making crops of corn and cotton in the years 1897, 1898, and 1899, and delivered the cotton to W. H. Atherton.

Elizabeth Hames testified that on September 15, 1897, she paid Atherton $25, and in the years 1897, 1898 and 1899, she turned over to him all the cotton raised on the premises and instructed him to sell and apply proceeds to payment of vendor's lien notes; that Mr. Atherton had never made her any report, though she frequently demanded it. Atherton admits having received the cotton and sold it, and swears that it brought $573.68. The widow testified that she made an effort to find out how she stood, and went to Atherton day after day to find out, and he would tell her every time that he was busy, and did not have time to look over the matter; that she went to employ an attorney to represent her in 1898, but that Atherton told her it was best to let it remain the way it was, and said that Lawyer Edwards was appointed to attend to the business. Edwards was Atherton's attorney. Atherton denied that the widow had instructed him to credit the proceeds of the cotton on the notes, and testified that he had used it all in the payment of debts due by Levi Hames, deceased, his intestate. Elizabeth Hames, joined by her children, applied to the Probate Court to strike from the inventory the homestead tract and the personal property inventoried, and on March 21, 1900, after due notice to W. H. Atherton, the administrator, the land in controversy and the personal property were set aside to the family.

On March 15, 1901, W. H. Atherton, as administrator, made application to the Probate Court for an order to sell the land in controversy, to satisfy the claims of W. L. McCord, alleged to be the then holder of the vendor's lien notes sued on, alleging that the estate had been fully administered, except said notes and expenses. The appellees con-

tested the application and denied McCord's ownership, and denied that the same had ever been proved up, allowed and established, and alleged that Atherton, the administrator, was the owner of said notes and had always been, and that Atherton had failed to prove up the same within a year, and that the same was barred by the statute of limitation, and that the same was really never transferred to McCord, but for the sole purpose of avoiding defendants' defenses thereto, and that the land had been set aside as .the homestead, and that the administrator's claim was barred. The court, upon hearing the application, refused to grant an order to sell the land. No appeal was taken from this action of the court.

Subsequently W. L. McCord made application to have the vendor's lien notes established as a claim against Levi Hames' estate and to make the same a charge upon the land described in appellant's petition, as a vendor's lien. Appellees contested this application on the ground, as shown by the record, that Atherton, as the owner of said notes, failed to prove up and present the same to the Probate Court for allowance within one year after the opening of administration, and hence that the same was barred and could not be urged as a claim against said estate and the widow and heirs of Levi Hames, deceased. The Probate Court sustained the plea presented by appellees. McCord did not appeal. Some time prior to this, not disclosed by the record, W. L. McCord brought a suit, No. 869, in the District Court of Rockwall County against W. H. Atherton and others upon the notes in controversy, and citation was asked against Elizabeth Hames and her children. The record further shows that the defendants in said cause, without disclosing their names, filed an amended original answer in which defendants demurred to and denied the allegations of the plaintiff's petition, specially alleged that Atherton had qualified in March, 1898, as administrator of Levi Hames, and was still such, and that the administration was still pending and open in the Probate Court of Rockwall County. That Atherton was the owner of said notes while he was administrator, and failed to prove up and present the same for allowance against said estate, and the defendant pleads that the claim is barred and can' not be urged against said estate and the widow and heirs. The defendants further pleaded that said notes had been fully paid by said cotton delivered in the years 1897, 1898 and 1899. This petition and answer was in case No. 869, in the District Court, and in December, 1900, the plaintiff voluntarily took a nonsuit.

The notes sued on were transferred by W. H. and M. A. Atherton to appellant, W. L. McCord, April 12, 1900. Appellant W. L. McCord, after the death of F. Sullivan, and on, to wit, the 27th day of December, 1901, procured quitclaim deed from Delphia McCreary and M. A. Atherton, joined by her husband, W. H. Atherton, and K. H. Sullivan, who are admitted to be the sole heirs of F. Sullivan, deceased, reciting a consideration of $10. On September 20, 1901, R. A. and H. M. Watson made a quitclaim deed to W. H. and M. A. Atherton, reciting a consideration of $1 cash, the above quitclaims being to the land in controversy. W. H. Atherton testified: "Those notes were transferred to W. L. McCord by my wife and while I was the administrator of the estate of Levi Hames, deceased." .

· W. L. McCord is the son-in-law of W. H. and M. A. Atherton. The notes sued on were transferred to McCord as a gift. Atherton testified: "My wife turned them over to him; I did not have anything to do with it." On October 22, 1903, pending this suit, W. H. Atherton, administrator, made his final report. In this report, among other things, he reported that he had received certain bales of cotton amounting to $329.90. He testified on this trial to having received from Elizabeth Hames $573.68 in cotton.

The Probate Court refused to determine whether said cotton constituted a part of the estate, or was the individual property of the widow and children, and adjudged that all orders approving the sales of such cotton are here set aside, and that the approval of said final report is without prejudice to either party. No notice of rescission of sale was given by McCord or any other person.

This suit was instituted by appellant, September 22, 1903, pending administration on Levi Hames' estate, to recover of Elizabeth Hames the 124 acres of land, on the theory that the two purchase money notes held by him had not been paid and that he had acquired by the quitclaim deeds referred to the superior title thereto, or in the alternative for a recovery of judgment on said notes with a foreclosure of his vendor's lien on said land.

Appellees answered by plea of not guilty and set up payment of said notes with cash and twenty-two bales of cotton, delivered to Atherton as the holder of said notes in the years 1897, 1898 and 1899. Said cotton was alleged to have been raised by them during said years on the land in controversy. They alleged that if the value of said cotton could not be allowed as payment, the same ought to be equitably set off against said notes, because Atherton, being insolvent, had transferred said notes after their maturity to appellant to avoid such set off. They offered to pay any balance found to be due. Appellant replied that all money paid to Atherton was received by him as administrator of Levi Hames' estate and duly paid out on claims of said estate, which was done with the knowledge and consent of appellees. Appellant further pleaded that appellees were estopped from now tendering any unpaid balance on said notes by reason of their resistance of appellant's efforts to have the notes and lien approved, or established, as a claim against Hames' estate.

The case was submitted to the jury on special issues requiring them to determine, (1) the value of the land in question at the time of trial; (2) the amount of the two notes, principal, interest and attorneys' fees; (3) the number of bales of cotton and the value thereof, delivered to Atherton each year during the years, 1897, 1898 and 1899; (4) whether or not Elizabeth Hames requested Atherton to apply proceeds of said cotton to payment of notes; (5) amount of money paid by Atherton for supplies for Elizabeth Hames and family during years 1897, 1898 and 1899, not paid back by her; (6) the amount due on notes at time of trial after deducting the amount received by Atherton for cotton, less the amount paid by him for supplies and taxes, for Elizabeth Hames and her family.

These several questions were answered by the jury, and in response to the sixth and last question they found that there was a balance due

on the notes sued on of $572.50, for which the court entered judgment, establishing the same with foreclosure of the vendor's lien on the land described in appellant's petition; and further adjudicating that appellant was not entitled to recover the land. From this judgment appellant has appealed.

It is insisted that the court erred in not rendering judgment for appellant for the land, because: First, the evidence showed that appellant held the legal title to the same, and no tender of the balance due on the notes was made in open court; second, the appellees were estopped to ask permission to pay off said notes for the reason they had prevented the sale of the land by an order of the Probate Court, and had prevented a foreclosure of the vendor's lien in the District Court in cause No. 869, thereby causing appellant at great expense to acquire the legal title to the land.

It has been held that the legal title which remains in the vendor where a lien is reserved in his deed to secure the purchase money, descends to the heirs of the vendor. (Hamblen v. Folts, 70 Texas, 136; 3 Pom. Equity, sec. 1261.) The deed from F. Sullivan to Levi Hames having expressly reserved the vendor's lien on the land therein conveyed, to secure the payment of the notes for which the two notes sued on were given in renewal, the superior title to said land remained in Sullivan. Upon his death this title descended to his heirs, with the right in them to enforce it under the same circumstances as their ancestor might have done. Had he lived he could have conveyed such title to appellant as the holder of the notes in question, so long as said notes remained unpaid, and we see no valid reason why his heirs were not authorized to do so. It follows that by the transfer of the notes described in appellant's petition and the execution and delivery to him of the deed by Sullivan's heirs, he acquired such title to the land sued for as descended to and remained in them at the date of said deed; and the jury having found that there was a balance unpaid on the notes, appellant was entitled to recover possession of the land, unless a rescission of the contract has been forfeited by affirmance, or it would be inequitable under the facts of the case to permit it to be done.

In the case of Tom v. Wollhoefer (61 Texas, 277) it is said: "The vendor's remedy by rescission is a harsh and stringent one, especially when a part of the consideration has been paid, and it is sought to forfeit the payment and recover or resell the land. Hence slight circumstances are seized upon to protect the vendee against the forfeiture of the amount paid or compel the vendor to seek redress by a suit for the balance of purchase money. He must not delay too long in insisting upon the payment of the money as it falls due or he will be considered as having waived the default. He must not treat the contract as still subsisting, or do any act which may be construed into its affirmance." Similar expressions may be found in many other cases in our reports, and the right of the vendee to assert his equities and avail himself of the conditions or circumstances mentioned in the above quotation is not limited to cases where the vendor alleges the facts of the transaction and prays for a rescission of the contract. "The right of the vendee to equitable relief when he is sued for the purchase money or for the land itself should not at all depend upon the

character or the form of the plaintiff's suit. Whether or not he is entitled to any equitable relief will be a proper subject of inquiry in every case. When the circumstances of the transaction show him entitled to deserve it, it should be administered, and when they do not, it should be denied." (Moore v. Geisecke, 76 Texas, 543.)

The rule that where the vendor has done nothing to waive the right and limitation or other equivalent defense in bar of his right to recover on debt with a foreclosure of the vendor's lien is not pleaded, he may in every case of an executory sale of land, when the vendee makes default in the payment of the purchase money, maintain a suit for the recovery of land, is not questioned. But we think in a case like this, where the suit is to recover the land or in the alternative to foreclose such lien, if for any reason it would be unequitable for the vendor or those claiming through him, to recover the land, a court of equity will not permit him to do so. The facts of the case under consideration, in our opinion, show the remedy of the appellant to sue and recover the land involved to be unusually and peculiarly harsh and unequitable. The evidence was unquestionably sufficient to justify the application of the proceeds of the cotton delivered to Atherton, less the deductions made, to the payment pro tanto of the notes sued on. The homestead was improperly inventoried as a part of Levi Hames' estate subject to administration except for the payment of the balance due on the purchase money notes, and the proceeds of the crops raised thereon by the appellees and delivered to Atherton, the then holder of said notes, should have been applied to the payment thereof.

That said notes were in fact separate property of his wife, M. A. Atherton, would make no difference. He was in possession of the notes presumably by consent of his wife, and was the ostensible owner. Besides, as the husband of Mrs. Atherton, he was authorized to collect the amount due on the notes, and appellees are entitled to a credit thereon for whatever amount was paid by them to him in liquidation thereof. The evidence is sufficient to show that Elizabeth Hames directed Atherton to credit the notes with the amount received by him from the sale of the cotton, but if not, it was Atherton's duty to so apply the sum so realized and having failed to do so, a court of equity will do what he should have done. Such sum, together with the amount paid by Levi Hames in his lifetime, was equal to the larger part of the purchase price of the land. At the time the renewal notes described in appellant's pleadings were taken, the original notes had been past due for about six years. Sullivan, the vendor, died; and up to the taking of the renewal notes by Atherton, and not until the suit was brought in September, 1903, so far as the record shows, was any intention manifested to rescind the sale and recover the land. Valuable improvements were made upon the land, and its value had been so enhanced at the time of the trial of this case in the court below that, according to the findings of the jury, it was then worth $4,960. Sullivan failed to declare the contract forfeited for nonpayment of the notes before his death.

It does not appear that Atherton or McCord could not have acquired from the heirs of Sullivan immediately upon their respective purchases of the notes, such title to the land in suit as said heirs possessed, and

it may be inferred, we think, from the small consideration paid therefor and other circumstances manifesting that such title was obtained by appellant without·difficulty when he sought to do so, that it could have been so done at the time of the purchase of said notes. Instead of doing so, however, and giving notice to appellees that he intended to rescind the sale and recover back the land, Atherton took the renewal notes, as stated, extending the time of their payment one and two years respectively, and held them after maturity for two or three years, and then gave them to appellant, who in turn held them for something over one and a half years longer before he acquired the Sullivan heirs' title and in all over three years before this suit was brought, meanwhile making efforts to have them allowed and approved as claims against Levi Hames' estate.

Such acts and conduct on the part of Sullivan, Atherton and appellant, the successive holders of said notes, were abundantly sufficient to justify Levi Hames and his widow and children in concluding that a strict performance of the contract on their part would not be insisted upon, and that the default in the payment of the notes had been waived. If the acts of appellant to have said notes approved and allowed as claims against Levi Hames' estate and to foreclose the vendor's lien, and the adverse action of the court thereupon, did not amount to an affirmance of the contract of sale, still we are clearly of the opinion that such acts, taken in connection with the long delay on the part of F. Sullivan, before his death, and that of Atherton, and of appellant McCord thereafter, in insisting upon the payment of the money after the purchase money notes became·due, must be considered or construed into an affirmance of said contract, or presenting such a state of facts as would render it unconscionable to permit a recovery of the land. There was no plea of limitation or other matter urged by appellees that revived appellant's right of election to sue for the land. They pleaded payment of the notes, but offered in the event any amount was found to be due to pay it within such time as the court should require. The amount unpaid was not and could not, from the information possessed by appellees, have been known to them. Under such circumstances we do not think it was indispensable that a tender of said amount should have been made in open court in order to defeat appellant's recovery of the land. (Scarborough v. Arrant, 25 Texas, 129; McCarty v. Moorer, 50 Texas, 287; McPherson v. Johnson, 69 Texas, 487; Kaufman v. Brown, 83 Texas, 41; Burkitt v. McDonald, 26 Texas Civ. App., 426, 64 S. W. Rep., 694.)

The plea of estoppel against appellees on the ground of their resistance to the approval and allowance of the notes sued on as claims against the estate of Levi Hames, and the establishment thereof, and foreclosure sought in the District Court of Rockwall County, can not be sustained. The notes sued on were not barred by limitation and no such plea or other equivalent matter in bar of appellant's right to have his claims allowed against Levi Hames' estate and the land sold to pay the same was interposed, and the principle enunciated in the case of White v. Cole (87 Texas, 500), cited by appellant's counsel, has no application. If appellant did not present his notes in a manner which entitled him to their allowance, or if there had been payments made which had not

been credited and which constituted a proper offset, they were legitimate defenses to be urged to appellant's application for the approval of his claims by the Probate Court. The plea that the notes had not been presented within one year from the date of the opening of administration could only have had the effect, in any event, of postponing their payment until other claims allowed and approved within such time had been paid. Such failure to present constituted no absolute bar of his right to recover on said notes. Appellant's claim being secured by a vendor's lien on the land in controversy and the heirs of F. Sullivan holding the superior title thereto, there was no such indefeasible title in Hames' estate, even if it had not been the homestead of appellees, as would authorize the payment of other claims out of the proceeds of the sale of the land. Robertson v. Paul, 16 Texas, 472. If the County Court based its refusal to approve appellant's claims upon such plea, the same was error, and appellant should have appealed to the District Court. The proceeding in the District Court of Rockwall County to establish appellant's debt, with a foreclosure of his lien, was met with the objection that administration was pending upon the estate of Levi Hames, etc., and appellant took a voluntary nonsuit. We are inclined to think that such defense was a complete answer to appellant's said suit, but whether it was or not, we are clearly of the opinion that appellees' resistance of the efforts made to have claims approved in the County Court and established in the District Court, as asserted, does not estop appellees from insisting in this suit that they should be allowed to pay off the notes and thereby defeat appellant's recovery of the land. Appellant had an adequate remedy to have his claims allowed and approved in the County Court as claims against Levi Hames' estate, with the right to have the land sold for their payment in preference to any other claim or right and was not compelled to purchase the legal title of Sullivan's heirs to prevent loss of both his debt and the land. We think it clearly appears that in equity and good conscience the sale of the land should not have been rescinded, and the court below did not err in refusing to allow a recovery of the land by appellant.

The contention of appellant, under his third assignment, that the evidence showed that the administrator of Levi Hames' estate had paid on claims duly allowed against said estate more money than he had received from Elizabeth Hames, as the proceeds of the cotton raised on the land and delivered to him, and therefore judgment should have been rendered for the full face value of the notes, with interest and attorneys' fees, is not tenable. We do not think the uncontradicted evidence shows that Elizabeth Hames consented to the disposition made of the proceeds of the cotton by Atherton. We hold that the proceeds of such cotton were not assets of Hames' estate, and should have been applied as a credit on the notes sued on by Atherton; that the application of such proceeds to the payment of other claims against said estate was unauthorized; and appellant having acquired the notes by gift and after their maturity is in no position to defeat appellees' right to the benefit of such credits in this action. The right of appellees to the credits was not adjudicated in the County Court, even if it had such right, which is not admitted.

Appellant's fourth, fifth, eighth, ninth, eleventh and twelfth assignments of error will be treated as waived and not considered, for the

reason that neither of said assignments is in compliance with the rules relating to the preparation of briefs, in that said assignments are not followed by a statement of the record in explanation and support of the proposition asserted.

Appellant's sixth assignment of error, complaining of the refusal of the court to permit the witness Atherton to testify that he had paid out of the proceeds of the cotton, for the use of Elizabeth Hames, other items than those named in exhibit "B," can not be considered because the question is not presented by proper bill of exception. The one referred to and found in the record was not approved by the judge presiding at the trial, but on the contrary appears to have been rejected.

Other assignments relating to the remarks of the court, the admission of testimony, the submission and refusal to submit certain issues to the jury, have all been carefully considered. Those pointing out any error at all are regarded as harmless and insufficient to warrant a reversal of the case. We conclude the law and facts of the case justified the judgment of the court below, that no reversible error has been shown, and said judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.