**YOUNG et ux. v. FITTS.**

No. 14032.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 16, 1940.

Rehearing Denied March 29, 1940.

Houtchens & Houtchens, Ardell M. Young, Robert V. Weddell, and J. Harold Craik, all of Fort Worth, for appellants.

Vincent Stine, of Henrietta, for appellee Earl C. Fitts.

Louis T. Holland, of Montague, for appellees Benson & Benson.

SPEER, Justice.

Earl C. Fitts sued C. O. Young and wife, Pearl Young, in a district court of Montague County, Texas, to recover about 155 acres of land in that county. The land is described in the petition, which is the usual statutory form of trespass to try title.

Young and wife answered by general denial, pleas of not guilty, by special pleas of limitation and by allegations attacking the validity of certain conveyances which they anticipated that Fitts would rely upon in his chain of title.

By way of cross-action, C. O. Young and wife plead in the statutory form of trespass to try title against Fitts and named D. B. Benson and W. E. Benson cross defendants and sought relief against the cross-defendants, quieting title in them, to the same lands described in plaintiff's petition.

A jury was demanded and at the conclusion of taking testimony, upon motion by plaintiff, Earl C. Fitts, the court instructed the jury to return a verdict in favor of plaintiff against defendants for title to the land and against defendants upon their cross-action. From judgment entered upon that verdict this appeal has been perfected by Young and wife.

We shall continue to designate the parties as they were known in the trial court, except when it becomes necessary to refer to them by name.

Upon the trial, plaintiff first introduced in evidence a deed from T. F. Lowe and wife to C. O. Young, dated November 5th, 1913, in which the land was conveyed. A part of the consideration was shown to have been the assumption of the payment by grantee of an outstanding vendor's lien note for $1,750. It was then stipulated among the parties that a vendor's lien was retained in that deed to secure payment of the $1,750 note, as well as certain other notes; that the others had been paid, and the $1,750 note reduced by payments to $1,000; that the note and lien had been transferred from time to time and is now owned by Earl C. Fitts. The renewal note of $1,000, executed by C. O. Young and wife, dated November 1st, 1932, payable November 1st, 1937, was then introduced in evidence. The foregoing facts were established by plaintiff without question or controversy by defendants, and it was upon this state of facts that the trial court gave the summary instruction for a verdict in plaintiff's favor. The judgment was rendered upon the verdict ordered. This much is conceded by defendants in their briefs.

In view of certain assignments of error urged by the Youngs (defendants), we shall refer briefly to another phase of the case. Plaintiff next offered in evidence an instrument purporting upon its face to be a warranty deed from Young and wife to Claud L. Gass, dated January 9th, 1935, filed for record two days later. Then, a deed from Gass and wife to D. B. Benson, W. E. Benson and Earl C. Fitts, dated October 11th, 1937, recorded next day after its date. This was followed by introducing in evidence a deed from D. B. and W. E. Benson to Earl C. Fitts, dated June 17th, 1938, filed for record June 22nd, 1938. The plaintiff then rested his case.

The Youngs, as defendants and as plaintiffs in their cross-action, placed in evidence a written contract and agreement between themselves on one side and Claud L. Gass on the other, dated January 10th, 1935, and recorded in the deed records of Montague County on December 31st, 1936, by the terms of which reference is made to the deed from the Youngs to Gass, recited in the contract to be of the same date, and in "conjunction with the contract." The instrument provides that the Youngs have the privilege of redeeming the 155 acres of land, conveyed by them to Gass, at any time prior to January 10th, 1937, by paying to Gass $1,966, the amount shown in the deed to have been paid, and also by paying $1,190, the amount of a note to Robert Ralston, assumed by Gass.

There are many other provisions and conditions in the contract, which, in view of what we shall later say, need not be mentioned here. The defendants, and plaintiffs in cross-action, called plaintiff Earl C. Fitts and both the Bensons to the witness stand and questioned them relative to their knowledge of the existing contract between the Youngs and Gass, as well also conversations had between them and Mr. and Mrs. Young before they took the deed from Gass. The Youngs testified in their own behalf and contradicted much of what had been said by Fitts and the Bensons. If this phase of the controversy was determinative of this appeal, more of the controversial points would be given and we would be inclined to hold that a jury question was raised. But, as stated, the matters have been related because three of defendants' assignments of error are devoted to showing that jury questions were raised and that the court should not have instructed a verdict against them. As above stated, defendants (appellants) admit in their briefs that the judgment was entered on the proof made that plaintiff (Fitts) was the owner of the vendor's lien note and possessed of all the rights of the original grantor, wherein the lien was first retained. If it was proper for the court to instruct a verdict for plaintiff on that phase of the case, no necessity existed for a determination of the contested issue on another branch upon which plaintiff may or may not have recovered. Hence, we shall not discuss the first three assignments which complain because the contested point was not submitted to the jury.

It is a well-settled rule of law in this State that generally a vendor who has reserved a vendor's lien in his conveyance to secure the payment of purchase money, may, under claim of his superior title, recover the title and possession of the land in an action of trespass to try title upon failure of the purchaser to pay according to the terms of the instruments. Such rights pass to subsequent holders of the purchase-money notes and the assigned lien and executory contract. 43 Tex.Jur., p. 370, sect. 210; Ibid, p. 383, sect. 216; Ibid, p. 385, sect. 217. Texas Osage Co-Op. Royalty Pool et al. v. Benz, Tex.Civ. App., 93 S.W.2d 196, writ dismissed; Booty v. O'Connor, Tex.Civ.App., 287 S. W. 282, writ refused.

The rule above announced is not an absolute one, but is dependent upon the circumstances surrounding the case. The rights of the grantor and his successors, holding a superior title to secure the purchase money, may be defeated by the purchaser or his grantees. It is obvious that payment of the purchase money would preclude the grantor from rescinding the sale and repossessing the land. The right to repossess the land under the superior title is likewise affected by equities in favor of the purchaser. Such conditions arise when the unpaid purchase money is small as compared to the original consideration paid and promised, or where the purchaser has made extensive permanent improvements upon the property so as to enhance its value far in excess of what it was when purchased; likewise, by a showing that the acts and conduct of the purchaser or other holder of the purchase-money note and lien are such as to reasonably lead the purchaser to believe that no forfeiture for nonpayment would be resorted to. 43 Tex.Jur., p. 386, sects. 217 and 218.

However, it is not every case in which valuable improvements have been made that the right of recovery of superior title will be denied, but is dependent upon equities in favor of the purchaser. In Booty v. O'Connor, supra, this principle was recognized. But it was there held that even if those equities are such as to entitle a purchaser to their benefits, they must be plead in defense of the forfeiture action.

It is generally recognized by our courts that when a purchaser has been sued by the seller for title and possession of land for failure to perform the contract of sale, equity will permit the purchaser to defeat such action by paying or tendering payment of the amount due and unpaid. In any event defendant's answer must include such a plea, before he can obtain that equitable relief.

In the instant case, defendants did not plead anything as against plaintiff's rights under the $1,000 note, except general denial and not guilty. There was no plea of an offer to make payment or to otherwise do equity in the premises, nor did they plead that plaintiff was estopped by any former acts or conduct to rely upon his remedy to recover the land for the failure of the Youngs to pay the purchase-money note. .

The record before us discloses that when the parties had rested and the case was

closed, plaintiff moved for an instructed verdict upon the pleadings and evidence. (The evidence relied upon being that hereinabove referred to concerning the $1,000 note). Arguments and authorities. were heard by the court and just prior to the court's ruling thereon, counsel for the Youngs insisted that because of the conflict in the testimony between the parties regarding the nature of the conveyance from the Youngs to Gass, they were entitled to have the case submitted to the jury on those disputed facts. During his argument, Mr. Houtchens (the Youngs' counsel) said: " * * * We realize that the law embodies on us a certain amount, but they didn't make any demands on Young to pay this amount. They asked him, all of them, at some time if he could pay it, and he said he thought he could. I say now he can and it will be done today, on that first lien note, if they will take it." Mr. Houtchens, turning to Mr. Benson, a cross-defendant, and of counsel for plaintiff, asked: "Will you take that amount of money and satisfy the first lien? I am saying I'll pay you one thousand dollars and all interest on it and whatever taxes there are."

Mr. Benson, replying to the question asked and statement made, said: "There is no issue before the court like that."

Houtchens: "I just want to know, will you do it? Will you do that or not?"

Benson: "Why, no. That is not an issue in the case, after you get up and lose a lawsuit, certainly you'll pay off."

Houtchens: "We haven't lost any lawsuit."

Benson: "All right, you make your tender and let the record show you are tendering it and what you are tendering."

Mr. Houtchens then asked the court for permission to file a trial amendment, stating he did not think it necessary but that he would do so, with the court's permission. He said that to plaintiff's suit in trespass to try title, defendants had plead not guilty; that they could plead anything they wanted to. He desired to file a trial amendment offering the tender. Counsel stated to the court that he would give his check to cover the indebtedness and would pay for a 'phone call to a Fort Worth bank to have it certified. That it was then 5:20 P. M. and that if the court would postpone the hearing until the next day at 9 o'clock he would have the cash in court to cover the note with interest, all taxes and insurance paid on the property. Over plaintiff's objections the court permitted the filing of a trial amendment, which was in these words: "Come now the defendants, C. O. Young and wife, Pearl Young, and with leave of the court first had and obtained, file this their trial amendment in this cause and hereby tender and offer to pay the amount of the note sued on, which is alleged to be in the sum of one thousand dollars, together with any accrued interest thereon, if the plaintiff or cross defendants will give us the information as to how much the interest is, together with any legal taxes that may have been paid by the plaintiff or any one of the cross defendants, together with any insurance premiums that may have been paid by them * * *."

After further arguments relating to the sufficiency of the tender, as contained in the trial amendment, and counsel's request to postpone the ruling until the next day, the court stated that he was of the opinion that the controverted matters should have been arranged before the lawsuit ended; that a postponement would be denied, and concluded that the authorities presented by plaintiff required him to instruct the jury to return a verdict for the plaintiff. This was done and the judgment entered is the basis of defendants' 4th, 5th, 6th and 7th assignments of error.

It will be observed that at the time counsel for defendants was discussing with the court plaintiff's motion for an instructed verdict, and orally offered to give his personal check to cover the note, taxes and insurance, and the subsequent statement by counsel to the effect that if the court would postpone the further proceedings until the next day he would tender into court the actual cash to cover the items if plaintiff's counsel would tell him how much it would require, there was no pleading of any character by defendant which would defeat plaintiff's recovery, regardless of the nature of a tender made at that time. Subsequent to the filing of the so called trial amendment above quoted, no tender of any kind was made as reflected by the record. It is argued in the briefs that when plaintiff's counsel, during the argument between him and Mr. Houtchens, declined to accept payment, further tender was rendered unnecessary. When plaintiff's counsel answered the inquiry if he would accept the money, he did

say "no", but the remainder of his statement in connection therewith would justify his answer, for, as stated by him at the time, "that is not an issue in the case", clearly meant such an issue had not been made by the pleadings and that counsel would not waive it by accepting a tender when none was pleaded. In the absence of a waiver by the opposing party of pleadings to support it, a perfectly valid tender made by defendants without such a pleading would not avail them anything. Clearly, plaintiff declined to waive it. Absent such a pleading, defendants' promise to make a tender, conditioned upon contingencies, was not a tender. No tender of any kind appears to have been made after the court permitted the trial amendment. Stephens v. Reik, Tex.Civ.App., 247 S.W. 627; Pell v. Chandos, Tex.Civ. App., 27 S.W. 48; Crain v. Nat. Life Ins. Co., 56 Tex.Civ.App. 406, 120 S.W. 1098, writ refused.

■ The record reflects that the Youngs knew at all times that the $1,000 purchase-money note was outstanding; they knew, also, that they had not paid the interest on it since their conveyance to Gass, in January, 1935, nor had they rendered or paid the taxes since that time. The deed records disclosed that when the suit was instituted, plaintiff Fitts owned the note and lien; they were further charged with notice that under such circumstances, that unless Fitts had estopped himself from asserting that right, he could recover the land in a trespass to try title suit by making proof of the note, lien and his ownership. No defensive pleadings were made by the Youngs which would entitle them to defeat that right of plaintiff. No reason is presented why these matters were not apparent to defendants when they filed their answer and announced ready upon the merits. No valid reason occurs to us why plaintiff should be penalized for the apparent oversight of defendants to plead their case in defense of plaintiff's equitable right to recover. City of Fort Worth v. Rosen, Tex.Civ. App., 203 S.W. 84, affirmed by the Supreme Court, Tex.Com.App., 228 S.W. 933; Pell v. Chandos, Tex.Civ.App., 27 S.W. 48; Owensboro Wagon Co. v. San Antonio Tie & Lumber Co., Tex.Civ.App., 199 S. W. 701.

It further appears that when plaintiff began to develop his case, the first instrument offered was the deed in which the vendor's lien note was assumed by the purchaser and a lien retained to secure its payment. The next instrument offered was the note. These instruments within themselves were sufficient to put defendants upon notice of the matters upon which plaintiff would depend for recovery, even though it had not occurred to them prior to that time that plaintiff would rely upon that theory, rather than the chain of title from Young to Gass and Gass to plaintiff. No claim of surprise or request for withdrawal of an announcement of ready, or for postponement to meet that condition, was made. Defendants could not speculate upon the result of the trial until all parties had closed taking testimony, a motion made for an instructed verdict, the motion argued and authorities presented which convinced the court, and defendants' counsel, as indicated by the record, that plaintiff was entitled to an instructed verdict at that time, and then, for the first time, seek a postponement of the trial until defendants could get ready to meet that condition.

■ A postponement as requested by defendants was within the sound discretion of the trial court. We have no means of knowing the condition of the court's docket with respect to the orderly transaction of its business; whether there were other cases set for the next day, and disappointment and inconveniences to other litigants would follow if a further hearing of this case should be taken up at that time, are not made to appear. Nor can it be said that the granting of the request would have resulted in a termination of the case, even on the next day. It is needless to speculate as to these things. The trial court resolved defendants' request against them in an exercise of his discretion. We are not prepared to say that he abused the discretion given him by law.

Upon the theory that the type of tender made by defendants at the time and the manner of its making defeated plaintiff's right to an instructed verdict, we are cited to the cases of Seaboard Bank & Trust Co. v. Amuny, Tex.Civ.App., 6 S.W.2d 186, affirmed, Tex.Com.App., 23 S.W.2d 287; McCord v. Hames, 38 Tex.Civ.App., 239, 85 S.W. 504, writ denied; Ball v. Belden, 59 Tex.Civ.App. 29, 126 S.W. 20; Moore v. Brown, 46 Tex.Civ.App. 523, 103 S.W. 242, writ refused. We have read these and other similar holdings, but find distinguishing features in each from the facts in the instant case. In some of those

cases, the answers of defendants embraced pleas of payment and partial payment of the vendor's lien note relied upon by plaintiff, and asked for accountings of payments made and an offer to do equity by paying the remainder found by the court to be due and unpaid. In others, the answer showed that improvements had been made upon the property at a great expense, showing the inequity of permitting the forfeiture, and a further offer to do equity by paying the amounts shown to be due and owing. In each and all of those cases, the pleadings of defendant were sufficient to support the proffered evidence. In the Seaboard Bank & Trust Co. case, supra, it was held that because defendant had offered in his pleadings to pay the amount of the note, less attorney's fees, that it amounted to no tender at all. It would unnecessarily extend this opinion to discuss each of those cases separately.

By these assignments, it is also contended by defendants that because of the length of time the note for $1,000 had been running, and the frequent renewals and extensions of previous owners, the right of acquiring the superior title by the plaintiff who so recently acquired the note and lien had been waived and plaintiff was estopped to now assert that equitable remedy. By way of argument, defendants' counsel reminds us that after this long lapse of years and said former renewals, it would be inequitable, unfair and unconscionable to permit plaintiff to resort to this means of acquiring title to the land.

Several different persons had owned the $1,000 note and lien here involved prior to the time it was acquired by plaintiff. Over the long period of years since its assumption by defendants, it appears that they had paid the interest and had reduced the principal. Those who owned the note apparently had been willing to forego their right of foreclosure in consideration of interest and partial payments. But defendants quit paying interest, taxes or house repairs in 1935, when he made the conveyance to Gass. Plaintiff, who owned such equity as Gass conveyed, paid the interest for subsequent years, along with the taxes, and for a reason satisfactory to himslf, chose to buy the note and lien from the then owner, placed his assignment on record and later instituted this suit. The right to recover the land under the superior title thereto was his privilege unless by his conduct he had waived it.

There is nothing in the record to show that he did anything in connection with his ownership that could be construed to mean a waiver or such as would work an estoppel to assert the right. Neither ground was plead or attempted to be proved. The most that could be assumed that plaintiff knew what others had done, was that during the long period of time since the execution of the note, no owner had attempted to forfeit the executory contract. It was not shown that plaintiff knew of any conduct by previous owners that would prevent them from asserting that right. He could not be bound by such, if they ever existed. In Amuny v. Seaboard Bank & Trust Co., Tex.Com.App., 23 S.W.2d 287, at page 288, cited by defendants, the court used this language: "Mere indulgence of the holder [of a note] after default does not tend of itself to show an extension by contract, nor does it evidence any intention not to enforce the contract, according to its terms, for the right to enforce is continuous after the breach to the maximum period of limitation. It means nothing to say that common honesty, equity, and good conscience would require notice under such circumstances of an intention to enforce the contract."

As we view the record in this case, no error is shown in the court's action in giving the instructed verdict and entering judgment thereon. His acts in doing so were equivalent to a holding that no legal defense was presented to plaintiff's right to recover the superior title to the land under his note and lien; that no pleadings were presented by defendants which entitled them to relieve the situation by making payment of the note, nor that a waiver or estoppel was presented. There is nothing shown that would require us to hold that the court abused his discretion in refusing to grant the postponement when that request was made. The assignments raising these questions are overruled.

What we have said renders the questions raised by assignments one, two and three immaterial. The branch of the case upon which the court admittedly based his judgment warranted the order and it becomes unnecessary to determine whether or not an entirely different branch presented a jury question. This would only be material if the one upon which the judgment was entered was error.

Finding no error in the record for which the judgment of the trial court should be

reversed, it becomes our duty to affirm it. It is so ordered.

## On Motion for Rehearing.

On motion for rehearing, our attention is called to expressions used by us in the original opinion, which we think should be stricken, since they are susceptible to the construction, as contended by defendants, that our conclusions were based upon a lack of pleadings by them of waiver and estoppel as against the plaintiff.

We said in the original opinion: "There was no plea of an offer to make payment or to otherwise do equity in the premises, nor did they plead that plaintiff was estopped by any former acts or conduct to rely upon his remedy to recover the land for the failure of the Youngs to pay the purchase money note."

That part of the above-quoted portion of the opinion which refers to a failure to plead waiver and estoppel, and any other expression in the opinion which may be construed as such, are withdrawn by us.

We are now fully convinced that the plea of not guilty interposed by defendants as against plaintiff's petition in trespass to try title would entitle them to prove any facts that existed to show that plaintiff had waived or was estopped to assert his rights for rescission of the original executory contract of sale of which his note was a part of the purchase money. 41 Tex.Jur., sect. 139, p. 633, and cases there cited.

It is earnestly insisted by defendants in their motion that the long standing of the note and lien, the numerous maturities and extensions by previous owners, and the purchase by plaintiff after maturity, were circumstances tending to show that he had waived his right of rescission and was estopped to assert that right at the time he did so. Upon the authorities cited in the original opinion, we still think that there was no testimony of probative force adduced tending to show that plaintiff had done any of the things relied upon by defendants to show waiver or estoppel. We have not seen any case which supports the theory contended for in the motion that plaintiff who purchased the note would be bound by acts of his predecessors in title to the note and lien. There was absolutely no evidence that any one of the previous owners had ever obligated himself not to rely upon his rights under the executory contract. The most that could be said of their acts is that they received interest, partial payments, renewed and extended the maturity from time to time. In the Amuny v. Seaboard Bank case, supra, it was held that such acts did not evidence any intention not to enforce the contract. Certainly, if those acts would not have constituted a waiver or estoppel as against plaintiff's predecessors, it cannot now be said to have that effect upon plaintiff who purchased from them. We think there was no evidence before the court raising an issue of waiver or estoppel; therefore, nothing was presented on that point for determination by the jury.

In all other respects we adhere to our conclusions as reflected in the original opinion, and overrule the motion for rehearing.