**YOUNG et ux. v. FITTS.**

No. 2386—7755.

Commission of Appeals of Texas, Section A.
Jan. 7, 1942.

Houtchens & Houtchens, Ardell M. Young, J. Harold Craik, and Robert V. Weddell, all of Fort Worth, for plaintiffs in error.

Stine, Bunting & Stine and Vincent Stine, all of Henrietta, for defendants in error Fitts and others.

Louis T. Holland, of Montague, for defendant in error Benson.

BREWSTER, Commissioner.

This is an action in trespass to try title brought by respondent, Earl C. Fitts, against petitioners, C. O. Young and wife, Pearl Young, for title and possession of 155.8 acres of land in Montague County, Texas. Judgment was entered for Fitts on an instructed verdict and the same was affirmed by the Court of Civil Appeals, at Fort Worth. 138 S.W.2d 579.

Fitts asserted two titles but, as the trial court instructed the verdict on undisputed proof of one of them, which action became the subject matter of this appeal, only the one will be considered here.

The common source was a deed from one T. F. Lowe and wife to C. O. Young, of date November 5, 1913. The total recited consideration for this deed was $5,444.25 as follows: (1) $400 cash paid; (2) two notes executed by Young to Lowe for $948.-27 and $948.28, respectively; (3) assumption by Young of two notes in the principal sum of $698.85 each executed by Lowe in favor of Texas Land & Mortgage Company, Ltd.; and (4) assumption by Young of a note in the principal sum of $1,750 executed by Lowe on February 8, 1912, in favor of the Scottish American Mortgage Company. The vendor's lien was expressly reserved to secure the payment of all said notes.

The parties stipulated that all these notes had been paid except the $1,750 last mentioned and that it "has been reduced by partial payments and has been extended from time to time by C. O. Young and. wife, Pearl Young; and that it has been transferred from time to time, and that at each transfer the lien securing the same together with all interest in the land, as originally existing in favor of the vendor to Mr. Young, has been transferred from party to party and is now owned by this plaintiff, Earl C. Fitts; that the lien as well as the note has been transferred down to and now belongs to the plaintiff, Earl C. Fitts, and the note is in the sum of $1000.-00." This note, offered in evidence, was executed by C. O. Young and wife, Pearl Young, on November 1, 1932, payable to the order of Lucy S. Clark on November 1, 1937, with interest at 7 per cent. per annum, payable annually, and it expressly recognized and retained the existing vendor's lien to secure its payment. It bore the endorsement, without recourse, of payee, Lucy S. Clark to plaintiff, Earl C. Fitts. After all parties had rested, Fitts moved for an instructed verdict on the principle that as the holder of the aforesaid unpaid vendor's lien note he had the superior legal title as against defendant Young who owed it. After argument of the motion had been concluded and the trial court had indicated his opinion that the motion should be granted, counsel for Young said: "I tender into court one thousand dollars and whatever interest there is on it and if they will take it, I'll give it today on my personal check. That is on the first lien. * * As I said, I am tendering that one thousand dollars for the first lien note and the interest on it. * * They asked him, all of them at some time, if he could pay it, and he said he thought he could. I say now he can and it will be done today, on that first lien note, if they will take it." Then, addressing opposing counsel, he said: "May I ask you one thing. Will you take that amount of money and satisfy the first lien? I am saying I'll pay you one thousand dollars and all interest on it and whatever taxes there are." To which opposing counsel replied: "There's no issue before the court like that." Then Young's counsel insisted: "I just want to know, will you do it? Will you do that or not?" And he received this reply: "Why no.

That is not an issue in the case. After you get up and lose a law suit, certainly you'll pay off." Apparently taking opposing counsel's statement that tender was "not an issue in the case" as a suggestion of the lack of proper pleading, Young's attorney then asked the court's permission to file a trial amendment "offering the tender." And after the court had suggested "if you have the money here" a trial amendment might be accepted, counsel said: "I don't have a thousand dollars with me, Judge. I'll pay the phone call to Fort Worth. I am saying if they will take it, I'll get the money. There's no question about it being got, if they'll take it. I can get it. * * * I'll just say this much: I'll tender the cash and I'll have it here in the morning. I can get it. Whatever the note is, whatever insurance and taxes and interest there is on it. Will you take it?" Then, after calling the court's attention to the fact that it was twenty minutes past five o'clock, counsel dictated the following trial amendment, which was, by agreement and with consent of the Court, considered as filed: "Comes now the defendant, C. O. Young and wife, Pearl Young, and with leave of the court first had and obtained file this their trial amendment in this cause and hereby tender and offer to pay the amount of the note sued on, which is alleged to be in the sum of one thousand dollars, together with any accrued interest thereon if the plaintiff or cross defendants will give us the information as to how much the interest is, together with any legal taxes that may have been paid by the plaintiff or anyone of the cross defendants, together with any insurance premiums that may have been paid by them." With the observation that "the parties should have made arrangements before the lawsuit ended" the Court then ordered the verdict for plaintiff.

Did the proceedings just recounted constitute such tender, or offer of tender, as, when executed, would defeat a rescission by Fitts of the deed from Lowe above described? We think so.

Underlying principles to be borne in mind in a proper consideration of the question immediately before us are: (1) A vendee, until he pays all the agreed purchase price, cannot dispute his vendor's title and when default in such payment occurs the vendor, or his transferee, may have his action in trespass to try title; (2) such action the vendee can defeat by tender of what is due, Baumgarten v. Smith, 37 Tex. 439, Tom v. Wollhoefer, 61 Tex. 277; (3) while trespass to try title is an action at law, the plaintiff may assert either a legal or an equitable title, and if he shows the same is superior he is entitled to recover, but in every such case the equities and rights of both plaintiff and defendant should be inquired into and settled, Kauffman & Runge v. Brown, 83 Tex. 41, 18 S.W. 425, and equitable principles, if properly invoked in the pleadings, will be given effect in determining the relative merits of the conflicting claims, 41 Tex.Jur., sec. 8,. p. 457; (4) the vendor's remedy of rescission is a harsh and stringent one, particularly when part of the consideration has been paid and it is sought to forfeit such payment and recover the land, and "slight circumstances are seized upon to protect the vendee against the forfeiture of the amount paid, or compel the vendor to seek redress by a suit for the balance due upon the purchase money," Tom v. Wollhoefer, supra; and (5) either party may waive his right or lose it by failure properly or seasonably to invoke it.

Fitts maintains that Young lost his right of tender because he neither timely nor properly invoked it. But, under the facts of this case, we are constrained to hold that such contention cannot be sustained. The trial was had on May 8, 1939. The vendor's lien note for $1,000, which was the basis of the asserted superior title in Fitts, was the balance due on a $1,750 note executed on February 8, 1912, exactly 27¼ years previously, and assumed by Young when he purchased the land in controversy on November 5, 1913, more than twenty-five years before the superior title was sought to be asserted thereunder. It represented less than one-fifth of the total consideration of $5,444.25 that Young paid and agreed to pay for said land when he bought it. Although Young had paid no interest on the note since Fitts bought the other title on which Fitts' suit is based, Fitts never at any time after he bought the note demanded of Young that he pay it. Moreover, it had been reduced by partial payments and extended from time to time by Young and his wife, the last such transaction being on November 1, 1932, when they executed the note in question payable on November 1, 1937. All other consideration Young agreed to pay for the deed of date November 5, 1913, had been paid. Under these facts, Young, at 5:20 in the afternoon, offered to give a check for the principal and interest due

on the $1,000 note together with all taxes and insurance that were due or had been paid thereon and to pay the cost of a telephone call to Fort Worth to give Fitts assurance that the check was good, or, in the alternative, he offered, if the Court would give him until morning and if Fitts would advise the total amount due, to go to Fort Worth and bring in the cash to pay said sums.

We believe the equities of this situation are with Young. We fail to see why the situation had become so urgent after the $1,000 had remained unpaid for more than a quarter of a century because of many indulgences on the part of the holder of the note that Young could not be given from 5:20 o'clock in the afternoon until 9 o'clock next morning to raise the several sums of money due by reason of the note, particularly in view of the fact that the trial court would have to bring the jury back anyhow to pass on disputed issues of fact arising as to the other title asserted by Fitts, if the money were produced. Under all the circumstances, if Young was willing to pay off this ancient indebtedness and take a chance on losing on the other title, we think he should have been granted the short time he requested in which to bring in the money. Assuredly, he at least was offering to do equity.

In Moore v. Brown, 46 Tex.Civ.App., 523, 103 S.W. 242, 244, error refused, the plaintiff sued in trespass to try title relying on his superior title as the holder of three unpaid vendor's lien notes. The defendant alleged that he had made a number of payments and had fully paid the notes, but prayed, in the event he should be mistaken as to payment, that the Court determine the true amount due upon the notes and enter foreclosure judgment therefor; he further alleged that he tendered into court any amount found to be due plaintiff on the notes. In a supplemental petition the plaintiff renewed his prayer for title and possession but in the alternative for a foreclosure judgment. The Court held that plaintiff was not entitled to his rescission but gave him judgment for the balance due with foreclosure of his vendor's lien. In overruling plaintiff's contention that the trial court erred in denying rescission, the Court of Civil Appeals said:

"Where part of the consideration has been paid, the right to rescind may be defeated by showing that there has been too long a delay in insisting on the payment of the purchase money as it falls due and in treating the contract as still existing. * * *

"It is contended that there was no such tender by defendant of the amount due on the notes as would defeat plaintiff's right to rescind. The defendant in his pleading asks the court to determine the amount that is due on the notes, if anything * * *. No money was in fact paid into court. The pleadings show that the defendant did not know the balance due on the notes. *His tender only amounted, in effect, to an offer to do equity. Such offer is sufficient in an equitable case, as is the present suit.* [Italics ours.] Appellee had offered to have the balance due on the notes paid by another and plaintiff refused the offer. The pleading was sufficient without paying the money into Court. Gardner v. Randell, 70 Tex. 453, 454, 7 S.W. 781."

There are other equities militating against Fitts and favoring Young. One of them, often noted in the authorities, is the long lapse of time since the original note was made without any demand ever having been made by Fitts or any of his predecessor holders for its payment. Fitts had never made any such demand, notwithstanding Young had never paid any interest on the note and had paid no taxes on the land or rendered it for taxes since 1935.

"The remedy by rescission is not favored, and, as has been said, slight circumstances, when they may be properly treated as indicative of a purpose upon the part of the vendor not to insist on that remedy, may be treated as a waiver of the right to rescind, unless its maintenance becomes necessary to enable the vendor to enforce the payment of the consideration for which he contracted to sell the land * * *. The delay of the vendor in enforcing the payment of the purchase money as the installments thereof became due, and his acceptance of considerable payments during a long period of time, were acts calculated to induce the vendee to believe that his right to rescind was waived." Moore v. Giesecke, 76 Tex. 543, 13 S.W. 290, 293.

"It is the rule that when a vendor has received part of the purchase money, and gives indulgence after default in payment of another part of the purchase money, there must, as a general rule, be a demand of payment, and notice of an inten-

tion to rescind the contract, before advantage could be taken of the default and a rescission had. Equity and fair dealing furnish a sufficient reason for the existence of such a rule." Ball v. Belden, 59 Tex.Civ.App. 29, 126 S.W. 20, 22.

See, also, 2 Black Resc., sec. 440, p. 1078; 43 Tex.Jur., p. 373; Hall v. Dallas Joint Stock Land Bank, Tex.Civ.App., 95 S.W. 2d 200, error refused; Moore v. Brown, supra.

■ Another "slight circumstance" favoring Young is that both in his pleaded "tender" and in the colloquy preceding the same he sought information as to the total amount due on the note and indicated his willingness to pay whatever it was. Certainly the amount of taxes and insurance they had paid, and perhaps the interest due on the note, was a matter peculiarly within the knowledge of Fitts and his predecessor holders, yet the reply of his counsel to Young's requests was, "I think it would be a good idea for him to say how much he tenders" or, "Just let the record show whatever he's doing. If he offers an amount, let it state the amount." We believe this attitude on the part of Fitts was sufficient to relieve Young of any obligation to produce the money actually due in order to make his tender sufficient. It has been said that such a refusal to advise the vendee of the amount due constitutes a waiver by the creditor of any right to object to the sufficiency of the tender or of an offer to do equity. Haney v. Clark, 65 Tex. 93, 94. See McCord v. Hames, 38 Tex.Civ.App. 239, 85 S. W. 504 error refused; 62 C.J. sec. 87, p. 693.

■ Moreover, Fitts said he was not willing to take the amount of money due by Young on the note. Where the vendor refuses to accept any sum whatever from the vendee, in whatever form the offer of same may be made, he thereby denies any right of redemption in the latter and actual payment of money into court in connection with a tender is not necessary to make the tender good. Poff v. Miller, Tex. Com.App., 235 S.W. 570; Freeman v. Pierce, Tex.Civ.App., 250 S.W. 778.

Considering (1) the small proportion that the indebtedness in question bears to the original purchase price of the land sued for, (2) the long time that it had been suffered to run with repeated renewals and never any demand for payment, (3) Fitts' refusal to state the amount of money necessary to pay principal, interest, taxes and insurance due, and (4) his expressed unwillingness to accept the amount due, we believe it would be highly inequitable to say that Young's offer did not constitute a tender because he did not, in connection therewith, bring the money into court. In other words, the remedy by rescission not being favored in our courts and there existing strong countervailing equities on Young's side of the controversy, we believe he should have been given the time he requested in which to produce the money. Under the circumstances of this case, we feel that Young made such an "offer to do equity" as that the same constituted a tender, that his allegation of readiness, willingness and ability to pay was sufficient. Williston on Contracts, vol. VI, sec. 1816. See, also, Ball v. Belden, supra.

We have examined the authorities cited by respondent in urging the insufficiency of petitioners' tender and have concluded that they are not in point For example, in Pell et al. v. Chandos, Tex. Civ.App., 27 S.W. 48, it is plainly pointed out that there was no offer in appellant's pleadings to pay the money due and the court properly said that without such offer they could not, when the trial judge was announcing his decision in the case, avail themselves of a tender by a verbal offer to bring the money into court if it would be accepted. In Stone Cattle & Pasture Co. v. Boon, 73 Tex. 548, 11 S.W. 544, the defendant resorted to the defenses usually made in actions to try title and did not pay or tender the balance due or plead an unconditional offer to pay it. In Crain v. Natl. Life Ins. Co., 56 Tex.Civ.App. 406, 120 S.W. 1098, the defendants said they could and would pay provided plaintiff would give them from twenty to thirty days and meet two or three other conditions. In Stephens v. Reik, Tex.Civ. App., 247 S.W. 627, the vendee made no offer or tender of money but said he was ready to pay provided certain items in dispute were credited on the note. In State v. Hoffman, 109 Tex. 133, 201 S.W. 653, a tax suit, Chief Justice Phillips held the tender good but said, apparently obiter dicta, that in order to keep it good and thereby avoid penalties for non-payment while the defendant contested a portion of the taxes he alleged to be void, it was necessary to pay the money into the registry of the court. So we see nothing in

any of them at variance with what we have said.

It follows, therefore, that the judgments of the trial court and of the Court of Civil Appeals should be reversed and the cause remanded for a new trial in accordance herewith, and it is so ordered.

Judgments of trial court and Court of Civil Appeals both reversed and cause remanded.

Opinion adopted by the Supreme Court.