**DUKE et al.**

*v.*

**GARRETT et al.**

**No. 3144.**

Court of Civil Appeals of Texas. Waco.

Dec. 17, 1953.

Rehearing Denied Jan. 14, 1954.

Fred C. Reeder, Corpus Christi, F. B. Kimbell, Groesbeck, for appellants.

W. W. Mason, Mexia, M. E. Gates, Huntsville, for appellees.

McDONALD, Chief Justice.

This suit was filed on June 14, 1952 by W. C. Garrett against the Dukes (husband and wife) on an installment vendor's lien note given by the Dukes to Garrett as part of the purchase price of 124 acres of land in Limestone County, conveyed by Garrett and wife to the Dukes by general warranty deed. The Dukes defended on the ground that no amounts were past due on the note; that an accord and satisfaction was reached between the parties after suit was filed; and further, by cross action, asserted breach of the general warranty contained in the deed because the Garretts owned none of the minerals; and asked for damages by way of offset. The Garretts contended that all parties knew they did not own any of the minerals under the land

when the trade was made, and alleged a mutual mistake by the parties in preparation of the general warranty deed, and asked that it be reformed so as to exclude the minerals from the conveyance.

The note was dated on March 10, 1951; was payable at Austin, Texas; was in the principal amount of $3,000, and provided for payments to be made in installments of $300 principal, plus accrued interest at 5%, each six months from date. It further provided that individual payments might be made "on or before" the six months period; that payments would be credited first to accrued interest and then to principal; and that payments might be made by monthly deposits to the account of Oma Garrett in a Corpus Christi bank. Pursuant to the above, a savings account was opened in the name of Oma Garrett at the Corpus Christi bank and the passbook representing same was turned over by the Garretts to the Dukes so that the Dukes could make deposits to the account.

Under this arrangement the Dukes made payments as follows:

| 4 April 1951 | $50. |
| 4 Oct. 1951 | 250. |
| 12 Oct. 1951 | 600. |

The Garretts thereafter requested of the Dukes the passbook on the account and withdrew the above moneys from the Corpus Christi bank—and never returned the passbook to the Dukes.

The Garretts filed suit on the note on 14 June 1952.

Thereafter, on September 5, 1952, the Dukes paid Garrett $225 and Garrett receipted for the $225 in writing which stated that the $225 was in full of "all installments of interest and principal and claims due and payable up to and including 10 September 1952" on the note.

Thereafter on March 10, 1953 the Dukes deposited $307.50 in the registry of the District Court to be used by the Court on any payment the Court might find due to Garrett from the Dukes.

On April 28, 1953 Garrett amended his pleadings, contending that the $225 payment was not a valid settlement of the payments due on the note to September 10, 1952; but that if it was such that the payments on the note were again delinquent and he elected to mature the entire note; and prayed for judgment on the note and foreclosure of the vendor's lien.

Trial was to a jury. At the conclusion of the evidence the Court granted a motion for instructed verdict for Garrett and entered judgment on the directed verdict.

The Dukes appeal to this court upon 8 Points of Error, but which present only 2 basic contentions, to wit: That the Trial Court erred in granting motion for instructed verdict because: 1) After suit was filed there was a valid accord and satisfaction of all sums due to September 10, 1952 and that the undisputed evidence disclosed a fact situation which had the effect as a matter of law of excusing nonpayment of any sum that may have been due on the note from September 10, 1952 until the time of trial. 2) The Garretts' suit for reformation of the deed on grounds of mutual mistake raised an issue of fact for the jury, and upon which fact the evidence was conflicting.

■ As to the Dukes' (appellants') 1st contention—There is doubt in our mind that there was any amount due on the note on 14 June 1952, at the time suit was filed —but in any event we find that a valid accord and satisfaction was made between Garrett and the Dukes, after suit was filed, on September 5, 1952 when the Dukes paid Garrett the $225 and Garrett receipted for same in writing stating that same was "payment in full of all installments of interest and principal and claims due and payable up to and including 10 September 1952." No further payment was due or could become due until March 10, 1953.

■ The evidence reflects that the note was payable at Austin—at which place Garrett neither lived nor maintained a business—or at the Corpus Christi bank; that the Dukes attempted to make a deposit into

Garrett's savings account at the Corpus Christi bank, but were prevented from doing so because Garrett had not returned the passbook to the Dukes. Nevertheless the Dukes placed in the registry of the Court $307.50 to be applied on any sum found by the Court to be due on the note. While the $307.50 may have been a few dollars less than the principal payment and interest due on March 10, 1953, we feel that in view of the facts in the case it would be unconscionable to permit the note to be matured on this deficiency, in the absence of a demand for the correct amount being first made.

■■■■ Strict tender is not always required to protect the rights of a party from whom a tender would otherwise be required, where actual tender is made impossible by circumstances which are not due to his fault or which he cannot avoid. 52 Am.Jur. p. 216. Tender is likewise unnecessary where the creditor signifies that he will not accept it. Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509.

In the case at bar—Garrett filed suit initially before there was any delinquency in the payments due upon the note; thereafter accepted $225 as an accord and satisfaction of all amounts due through September 10, 1952; permitted the suit to remain on the docket; amended his pleadings denying that the $225 was an accord and satisfaction—but not offering to return the $225; stood by and saw the Dukes place $307.50 in the registry of the Court on March 10, 1953 (which amount was but a few dollars less than required to make the March 10, 1953 principal and interest payment); accelerated and matured a $3,000 installment note payable over a period of 60 months and upon which $1125. had been paid in 18 months; asked for judgment for the balance due and foreclosure of lien on the 124 acres; all of which was granted by instructed verdict—and without the jury having an opportunity to pass on fact issues in the case. We believe that the facts excuse a strict tender.

As to the Dukes' 2nd basic contention—that the Garretts' suit for reformation of the deed on the grounds of mutual mistake raised an issue of fact for the jury. The breach of warranty relied on by the Dukes was the failure of title to the mineral estate purportedly conveyed by the deed.

■■■ It is the law that in determining whether a motion for instructed verdict for appellee was properly granted, the court is bound to view the facts and inferences drawn therefrom in a light most favorable to the appellant—and against the instructed verdict. Further, it is only where there is *no* evidence or where the evidence is of such a character as to be of no probative force or value, that a Trial Judge may take a case from a jury and himself decide the issues. Mundy v. Stiles, Tex.Civ.App., 257 S.W.2d 750; Rule 268, Texas Rules of Civil Procedure, and notes of decisions cited thereunder; Theriot v. Smith, Tex. Civ.App., 263 S.W.2d 181. Further, the authorities are unanimous in holding that the question of whether or not there is a mutual mistake of fact so as to authorize the reformation of a deed is a question of fact for the jury. Olvey v. Jones, 137 Tex. 639, 156 S.W.2d 977.

■■■ In the case at bar there is an abundance of evidence to the effect that both the Dukes relied on the general warranty in the deed as conveying the mineral estate. The fact that there is much evidence to the contrary merely makes for an issue of fact for the jury to determine.

The judgment of the Trial Court is accordingly reversed and remanded.