Floyd F. DUKE et al., Appellants,

v.

W. C. GARRETT et ux., Appellees.

No. 3234.

Court of Civil Appeals of Texas.

Waco.

March 3, 1955.

Rehearing Denied March 24, 1955.

Fred C. Reeder, Corpus Christi, F. B. Kimbell, Groesbeck, for appellants.

W. W. Mason, Mexia, for appellee.

TIREY, Justice.

The plaintiffs brought this suit for debt and foreclosure of vendor's lien and deed of trust lien on a certain tract of land in Limestone County. This is the second appeal to this court. See Duke v. Garrett, Tex.Civ. App., 263 S.W.2d 680 for statement. For the sake of brevity, perhaps we should say that plaintiffs' suit is for the balance due for purchase money and foreclosure of vendor's lien and deed of trust lien, and appellants' cross-action sought to offset against purchase money the value of the minerals because of failure of title in this behalf.

On the second trial the jury found substantially: (1) that the failure of the parties to except the minerals from the deed as originally prepared, when they corrected it, was not due to a mutual mistake of the parties; (2) that at the time of the delivery of the deed, note and deed of trust Duke and his wife (grantees) did not waive the conveyance of any minerals in the land; (3) that at the time the grantees accepted the

deed and paid the grantors the down payment the grantees knew that the grantors did not own any of the minerals in the land; (4) that a new and different trade was not made between the grantors and grantees in Mr. Reeder's office in Corpus Christi, Texas on or about March 13, 1951; (5) that the reduction of the purchase price in the amount of $250 was not made by the grantors as an inducement to the grantees to accept title with the minerals and other defects outstanding; (6 and 7) that in March, 1953, Floyd F. Duke, one of the grantees, offered the First State Bank of Corpus Christi to deposit in said bank to the account of Oma Garrett, one of the grantors, all sums of money then due on the note in suit, and that such bank refused; (8 and 9) that in September, 1953, Duke offered to First State Bank of Corpus Christi to deposit in such bank to the account of Oma Garrett all sums of money then due on the note in question, and that such bank refused; and (10 and 11) that in March, 1954, Duke offered to the First State Bank to deposit in such bank to the account of Oma Garrett all sums of money then due on said note, and that such bank refused.

Plaintiff Garrett seasonably filed his motion for judgment non obstante veredicto, and in so doing asked the court to disregard the jury's findings on all the special issues submitted except Special Issue No. 3. The plaintiff set out his reasons therefor and prayed for appropriate relief. The defendants seasonably filed their motion for judgment in their favor and against W. C. Garrett and Oma Garrett upon the findings of the jury as here set out, and prayed for appropriate relief. The court, after hearing said motions, overruled defendants' motion and granted the plaintiff's motion and in the decree found that defendants are indebted to the plaintiff W. C. Garrett as of the date of the judgment in the sum of $2500.09, after allowing all credits and offsets, and that he is entitled to interest on said sum at the rate of 5% per annum, as provided for in the note. The decree then sets out by metes and bounds the property and decrees foreclosure of the vendor's lien and deed of trust lien in satisfaction and settlement of such judgment. The decree further provided that Floyd F. Duke and wife take nothing by reason of their cross-action.

The defendants assailed the decree entered on what they designate as eight points. They are substantially: (1) that the court erred in permitting appellees to introduce parol evidence to vary the terms of the deed here involved; (2) in submitting issue No. 3 of the court's charge to the jury inquiring whether or not appellants knew appellees did not own any of the minerals because such fact is wholly irrelevant and immaterial as to whether appellants knew or did not know that appellees did not own the minerals, for the reason that such knowledge, if any, did not change the duties and obligations of appellees under the terms of the general warranty deed; (3) in the event appellants be mistaken in their contentions with reference to Special Issue No. 3, as pointed out in Point 2, then in such event the trial court erred in sustaining appellees' objection to appellants' introducing evidence as to the value as of March 10, 1951 (the date of the deed in question) of the land as a whole; of the minerals without the rest of the land; the value of the land without the minerals because such evidence was competent on the question as to whether or not appellants knew appellees did not own the minerals; (4) that such evidence as to the value of the land as a whole was competent on the issue as to whether or not appellants knew appellees did not own the minerals as well as the issue as to the amount of damages sustained by appellants as a result of the failure of title to the minerals here involved; (5) that the court erred in excluding the testimony of Bill Kennedy to the effect that as of March 10, 1951, the reasonable market value of the land as a whole was between $35 and $45 per acre, the value of the land without the minerals being $10 per acre and the minerals without the rest of the land $30 per acre, because such evidence was competent both on the issue as to whether appellants knew appellees did not own the minerals, as well as the issue as to the amount of damages appellants are entitled to recover from appellees on the

failure of the general warranty contained in the deed; (6) the court erred in entering judgment on the note and the foreclosure of the liens and ordering a sale of the land because the undisputed evidence in the record, under the findings of the jury to Special Issues Nos. 6, 7, 8, 9, 10 and 11, shows that if appellants have ever failed to make any payment of any sum that has become due and payable upon the note, it has been due to the acts and conduct of the appellees rendering it impossible for appellants to make payments on the note in accordance with the terms of the note, and the undisputed agreement of the parties concerning the mode, manner or procedure of the carrying out of the exact terms of the note, and by reason thereof appellants are thereby legally excused for non-payment of any sum that might be due and payable upon the note; (7) the court erred in entering judgment for appellees for attorneys' fees provided in the note, because the undisputed evidence shows that Garrett instituted the suit on June 14, 1952, and that at that time there was not any sum of money whatever due upon the note and unpaid, and further, because on September 5, 1952, and after the institution of this suit by appellee, W. C. Garrett, at a time when a bona fide dispute existed between appellees and appellants as to whether or not there was any sum due upon the note and unpaid, appellee W. C. Garrett, for a valuable consideration of $225 cash, executed and delivered to appellants an instrument of writing fully releasing appellants from all claims upon the note and continued prosecution by appellee of his suit upon the note from and after September 5, 1952 was in effect the same as appellee instituting a suit on the note when there was nothing due on the note; (8) the court erred in not allowing appellants an offset in the sum of $274.50 against the note in question because it is not disputed that appellees lost the former appeal of this cause to this court, and it was stipulated in open court by the respective attorneys of record for appellees and appellants that appellants had paid $274.50 of the costs of the former appeal and appellees having lost the former appeal as a matter of law became liable for such costs, irrespective of their ability or inability to pay such costs, and appellants having paid $274.50, the cost of the former appeal of this case, are entitled to recover said sum of $274.50 from appellees by way of having said sum offset against the note in question.

Appellees' counter points are to the effect that since the evidence is without dispute that appellants knew that the mineral title to the land was outstanding in Tian before and at the time they closed the transaction (and the jury so found), and since there is an absence of fraud or any misrepresentation whatsoever upon the part of appellees, and since appellants are in possession and there is an absence of any testimony to the effect that appellants were about to be evicted from the premises, and since the evidence is without dispute that appellants relied upon the legal advice of their attorney and not upon the representations and statements of appellees, and since appellants did not offer to return possession of the premises and the deed for cancellation and do equity, they cannot defeat the suit of appellees to recover the unpaid purchase price of the land. We are in accord with this view.

Our Supreme Court in Ogburn v. Whitlow, 1891, 80 Tex. 239, 15 S.W. 807 had before it a cause similar to the one here, except that the purchaser of the real estate alleged that neither he nor the seller had notice of any defect in the title to the property at the time the purchase was made, and announced substantially the following rule: That where grantor sells land and accepts part cash and retains a vendor's lien to secure the unpaid purchase money, that such contract must be treated as an executed contract. The decisions of the Supreme Court upon the question of the right of the defendant to plead a failure of title when sued for the purchase money of land have recognized the distinction between executed and executory contracts. The distinction is stated as follows in the case of Cooper v. Singleton, 19 Tex. 260: "The difference between the liabilities of the vendee, under an executory and executed contract, is this: that in the former, he should be relieved by showing defect of title, unless on proof by the vendor that this was known at the sale,

and it was understood that such title should be taken as the vendor could give. In the latter, the vendee should establish beyond doubt that the title was a failure in whole or in part; that there was danger of eviction, and also such circumstances as would prima facie repel the presumption that at the time of the purchase he knew and intended to run the risk of the defect." "A purchaser who has gone into possession under a deed with warranty, without any notice of a defect in the title, may resist the payment of the purchase money, by showing his title to be worthless, and the existence of a superior outstanding title, by actual ouster, or, what is tantamount to the same, an indisputable superior outstanding title, and that he is liable to be evicted. * * * *He must return the possession of the premises and deed for cancellation."* See Demaret v. Bennett, 29 Tex. 262. See also Smith v. Nolen, 21 Tex. 496. Such rule was followed in Moore v. Vogel, 22 Tex.Civ.App. 235, 54 S.W. 1061 (writ ref.), and Knight v. Coleman County, Tex.Civ.App., 51 S.W. 258, (no writ history). See also Gantt v. McClellan (second case), Tex.Civ.App., 252 S.W. 229 (writ ref.). The foregoing rule announced by our Supreme Court has been followed in other jurisdictions. See Herron v. Harbour, 57 Okl. 71, 155 P. 506, and cases collated on pages 507, 508. This court followed and applied the foregoing rule in Houston v. Howerton, Tex.Civ.App., 48 S.W.2d 338 (writ dis., opinion by J. Alexander). See also Holt v. Holt, Tex.Civ. App., 1933, 59 S.W.2d 324 (writ ref.); Young v. Fitts, Tex.Com.App., 138 Tex. 136, 157 S.W.2d 873.

As we understand the record, it is without dispute that Hon. W. W. Mason did not know that the title to the minerals was outstanding, or of any other defects in the title, at the time the grantors requested him to prepare the deed. It is also without dispute that when Hon. Fred C. Reeder, attorney for the Dukes, conferred with appellants and appellees concerning the defects to the title that he had pointed out in his written opinion and while he was discussing with them the requirements for curing the defects he stated to Mr. Garrett that he could not represent him because he represented the Dukes in the matter, but he made no suggestion to the Garretts that they should confer with Mr. Mason or any other attorney about the serious objections that he had pointed out to the title. Testimony was tendered to the effect that the grantors told the Dukes that the mineral title was outstanding in Tian at the time the Dukes began negotiating with them for the purchase of the property but it is without dispute that the grantors obtained a partial abstract to the property and took it with them to Mr. Reeder's office in Corpus Christi where they met the Dukes. Mr. Reeder examined the title and gave a written opinion to the Dukes pointing out several serious objections, among them being that the title to the minerals was outstanding in Tian, and his requirement, among other things, was that a deed would have to be obtained from Tian. Mr. Reeder testified to the effect that there was some conversation between him and the grantors as to the curing of the defects to the title which he had pointed out, but that he advised the grantors he could not represent them and that he was representing only the Dukes; that he advised the Dukes not to complete the transaction until the defects pointed out by him were cured (he did not so advise the Garretts), but he advised the Dukes that if they completed the transaction they could rely on the general warranty in the deed.

■ Our view of the record here is that no issue was tendered by the pleader; nor testimony adduced thereon that the grantors would cure the defects in the title after they had been pointed out by Mr. Reeder; nor was any issue submitted to this effect; nor were there any exceptions taken to the court's charge in this behalf; nor was there any request on behalf of appellants for such issue. We think such issue was an independent ground of defense on behalf of appellants. See Ogburn v. Whitlow, supra, and other cases therein cited. See also Rule 279, Texas Rules of Civil Procedure, and Houston v. Howerton, supra, 48 S.W.2d at page 339, points 2, 3.

Going back to the pleadings on which appellants went to trial we find that the only allegation therein concerning the failure of the mineral title is the following: "There has been, and still is, a complete failure of title to the oil, gas and other minerals in, upon, or under said land, by reason of which there has been a breach by cross-defendants of the general warranty contained in said general warranty deed of cross-defendants to cross-plaintiffs * *." It is true that Special Issue No. 2 in the court's main charge did inquire: "Do you find from a preponderance of the evidence that at the time of the delivery of the deed, note and deed of trust involved in this law suit that Floyd F. Duke and wife, M. L. Duke, waived the conveyance of any minerals in and to said land", and the jury answered "No", but our view of the testimony is that it shows without dispute that appellants were relying on the advice of Mr. Reeder to the effect that the general warranty in the deed would protect them, although they had knowledge of such defects, and not upon any representation made to them by the grantors that they would cure this defect in the title. Moreover, Mr. Duke testified to the effect that Mr. Garrett paid to him the sum of $250 for the purpose of curing some of the defects pointed out, which $250 Duke delivered to his attorney Reeder at the time the sale was consummated. It is our view that under Rule 279, supra, and authorities here cited, it was the duty of the appellants to plead and prove that they relied upon the representations of the grantors that they would cure the defects in the title to the minerals after the Dukes had knowledge thereof and it was their duty to request an issue thereon, and having failed to do so, such issue was waived.

Going back to the rule stated in Ogburn v. Whitlow, supra, since the Dukes had actual and constructive notice of the defects in the title before they closed the trade, they must do equity, and having failed to pay the balance of the purchase price recited in the deed, and having failed to return possession of the premises and the deed for cancellation, the court is without power to grant them relief. Nor can they offset the purchase price because of the failure of the title to the mineral rights under the record here made and under the rule announced in Ogburn v. Whitlow, supra, and the other authorities here cited.

We have considered very carefully each of appellants' points but because of the views here expressed we do not deem it necessary to discuss any of them except to say that it is our view that the record is without dispute that the note was past due when the appellees filed their second amended petition on May 15, 1954, and appellants made no tender on the second trial, and each of appellants' points of error is overruled except Point 8, which we will hereinafter briefly discuss.

On the first appeal this court taxed costs against appellees in the amount of $274.50. Thereafter appellees filed affidavit of inability to pay costs and requested this court to issue mandate without the payment of costs of appeal (request granted), and it appears that appellees have not, as of this date, paid these costs. Rule 448, T.R.C.P., provides, among other things, " * * * Provided further, that nothing herein shall be construed to limit or impair the power of the Court of Civil Appeals to otherwise tax the costs for good cause." Appellants in the court below sought to offset the costs of $274.50, which they incurred and paid on the first appeal, and it is our view that such offset would be equitable. Needless to say, the judgment foreclosing the vendor's lien and deed of trust lien further provides for the payment and collection of the costs against appellants here and in order for appellants to protect the purchase they made they must pay all costs on the second trial, including the debt, interest and attorney's fees. We think it is equitable that appellants are entitled to a credit on the judgment as of the date it was entered for the $274.50, and that it is our duty to modify the judgment in this behalf.

Accordingly, the judgment heretofore entered in this cause is modified to the extent of said credit and, as modified, is in all things affirmed. See Rule 448, T.R.C.P., and Lone Star Gas Co. v. Childress, Tex. Civ.App., 187 S.W.2d 936, pt. 10 (no writ history).