**C. FARROW, Appellant,**

**v.**

**John SIMS et al., Appellees.**

**No. 15312.**

Court of Civil Appeals of Texas.

Dallas.

July 12, 1957.

Rehearing Denied Sept. 27, 1957.

On Second Motion for Rehearing
Jan. 10, 1958.

Further Rehearing Denied March 21, 1958.

Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., and Wm. Andress, Jr., Dallas, for appellant.

Grady Niblo and Austin S. Dodd, Dallas, for appellees.

DIXON, Chief Justice.

This is a trespass to try title suit, brought in two counts. After trial before the court without a jury judgment was rendered in favor of plaintiffs on both counts. Appellant C. Farrow was the defendant in both counts. As the parties plaintiff and the land involved were not the same in the two counts, we deem it advisable to discuss the counts separately.

### First Count

In the first count appellee John Sims and wife Eula Sims filed a statutory trespass to try title suit against appellant C.

Farrow for title and possession of a lot 59' by 186', being a part of Block No. 2642 of the City of Dallas, Texas. The answer of appellant Farrow was a plea of not guilty.

The evidence establishes that appellees claim title by virtue of a written contract of sale executed by E. A. Stallings, then the owner of the property; and that appellant claims title by virtue of a deed to him later executed by Cora P. Stallings, individually and as independent executrix of the will of E. A. Stallings, deceased. Thus E. A. Stallings is shown to be the common source of title.

Appellant's deed included numerous tracts of land for which appellant paid Cora P. Stallings about $30,000. The lot in controversy was one of the tracts of land described in the deed.

The record discloses that on July 23, 1948 a written contract was executed by Dr. E. A. Stallings as seller and appellees John Sims and Eula Sims as purchasers for the sale and purchase of the lot in controversy. The contract is too long to copy here in full, but we quote material parts:

"The purchase price is $1250.00, payable as follows: $250.00 Cash * * * and the execution by the purchasers of one vendor's lien note in the sum of One Thousand Dollars, payable to E. A. Stallings, or order, due in monthly installments of $25.00 each, including 6 per cent interest payable monthly, *the first installment to be due one month after date of deed* and one installment thereof due on or before the like day of each month thereafter until paid.

"The said executed note to be secured by Vendor's Lien and Deed of Trust with power of sale and with the usual covenants as to taxes, insurance, and default.

"Seller agrees to furnish Title Policy by Stewart Title Co. to said property, which shall be conveyed free and clear of any and all encumbrances except those named herein.

"Seller agrees, when title objections have been cured, to deliver a good and sufficient General Warranty Deed properly conveying said property to said Purchaser, and Purchaser agrees, *when said Deed is presented,* to pay the balance of the cash payment and execute the note and Deed of Trust herein provided for. Should the Purchaser fail to consummate this contract as specified for any reason, except title defects, Seller shall have the right to retain said cash deposit as liquidated damages for the breach of this contract, and shall pay to Agent therefrom the usual commission, or, Seller may enforce specific performance of this contract." (Emphasis ours.)

The contract of sale was not recorded.

The trial court's findings of fact, which find support in the evidence, are here quoted in part:

"(4) E. A. Stallings did not furnish deed or title policy nor was the vendor's lien note executed. The Sims went into immediate possession, paid the $250.00 cash and installments of $25.00 a month beginning August 23, 1948 and continuing with the exception of four months through April 25, 1951. Two other payments of $25.00 were made on August 10, 1951 and October 10, 1951. A total of $1,050.00 including the $250.00 cash payment, was paid on the purchase price of the lot. (5) Dr. E. A. Stallings died August 8, 1951 and on September 7, 1951 Mrs. Cora P. Stallings, widow of Dr. Stallings, qualified as independent executrix of his estate. (6) No demand was ever made by Dr. Stallings or Mrs. Stallings on Eula and John Sims for payment of the balance due under the contract of July 23, 1948 nor did either give any notice of intention to rescind the contract. (7) On September 12, 1952 Cora P. Stallings, as independent executrix of the estate of E. A. Stallings, conveyed the property described in paragraph 3 to C. Farrow, said lot being included with other property, said deed being filed for record September 19, 1952. (8) At the

time of the conveyance on September 12, 1952 to C. Farrow the said Farrow was permitted to deduct the sum of $1250.00 from the purchase price to take care of disputes with various parties as to their rights in the property conveyed. The nature of the disputed rights were (was) not fully known either to Mrs. Stallings or C. Farrow. (9) From date of contract July 23, 1948 until January 2, 1954 John and Eula Sims and the other plaintiffs with the permission of John and Eula Sims remained in possession and used the property described in paragraph 3. Two small houses, one 10 x 12 feet, the other 6 x 6 feet, were placed on the lot, as well as an iron pot for washing clothes and clothes line. At various times there was a garden and chickens, hogs, a cow and mule were kept on the lot. * * * (11) On January 9, 1954 C. Farrow entered upon both of said lots, moved the two small houses on the lot described in paragraph 3 off of said lot, cut down several trees and lowered the elevation by about three feet of the east one foot of the lot described in paragraph 10."

We quote also from the court's conclusions:

"(1) Eula and John Sims acquired an equitable title in the property described in paragraph 3, which equitable title they had on January 2, 1954. (2) Eula and John Sims had a right to possession of the property described in paragraph 3 on January 2, 1954. (3) C. Farrow accepted the deed to property described in paragraph 3 with notice of claims of John and Eula Sims. (4) Mrs. E. A. Stallings, executrix, having made no demand for payment nor given no notice of rescission, had no right to rescind the contract of July 23, 1948. (5) Eula and John Sims are entitled to recover title and possession of the property described in paragraph 3."

■ In his first point on appeal appellant Farrow says that the contract between E. A. Stallings and appellees John and Eula Sims was purely executory, unacknowledged and unrecorded; that appellees had defaulted in the payment of the purchase price; and that they had executed neither the note nor the deed of trust called for, nor did they ever request or receive a deed to the property from E. A. Stallings; consequently, says appellant, appellees do not have sufficient title, equitable or otherwise, to maintain an action in trespass to try title against Farrow, a purchaser and grantee in a deed from the record titleholder.

In support of his contention appellant cites us the cases of Barker v. Temple Lumber Co., 120 Tex. 244, 37 S.W.2d 721, and Gillian v. Day, Tex.Civ.App., 179 S.W.2d 575. In these and other cited cases it is held in effect that the purchaser of property under an executory contract of sale can only perfect his title to the land purchased by paying the purchase price in accordance with his agreement and that, upon his failure to do so, the vendor, having retained superior title, has the right to rescind the sale and convey the property to another. In such case the rescission is held to be binding on the defaulting purchaser named in the contract to the extent that he cannot successfully maintain an action in trespass to try title against those claiming under the original vendor.

We do not disagree with the holdings in the cases cited by appellant, but we are of the opinion that the holdings are inapplicable here for the following reasons:

(1) In the instant case the vendor himself, not the vendee, is in default. The written contract expressly obligated the vendor to deliver a warranty deed and a title policy to appellees upon thier making the cash payment of $250. Appellees made the cash payment, but the vendor never executed and delivered to them a warranty deed or a title policy. The first monthly installment of $25 was not to become due until one month "after date of deed." There is nothing in the record to show that appellees refused to execute the $1,000 installment note and deed of trust—in fact there is nothing in the record to show that they

were ever asked to do so. Nevertheless appellees made more than thirty of the monthly payments.

(2) There is evidence in the record that appellees tried to make additional payments. Appellees had moved to California, but testified they came to Dallas two or three times a year to visit their mother and sisters. On one occasion appellee Eula Sims and one of her sisters went to Terrell, Texas to see Dr. Stallings about the property, but he was too ill to be interviewed. He died about a week afterward. Eula Sims made one payment after his death and testified that she tried to make others, but the attorney representing the estate told her that the estate's files were in such a confused state that he couldn't find where appellees had any claim to the property.

(3) So far as the record shows, neither E. A. Stallings nor Cora P. Stallings, individually and as independent executrix, prior to the execution of the deed to appellant C. Farrow, made any demand on appellees for payment, or gave them any notice of rescission, or claimed the $250 cash payment was being retained as liquidated damages, or ever challenged appellees' possession of the property.

The circumstances above set out, which find support in the evidence, are sufficient to uphold the trial court's conclusion of law that Cora P. Stallings, either individually or as independent executrix, did not have the right to rescind appellees' contract of July 23, 1948; hence appellant C. Farrow, unless he was an innocent purchaser without notice, did not take good title by his deed from Cora P. Stallings. Young v. Fitts, 138 Tex. 136, 157 S.W.2d 873; Gulf Pipe Line Co. v. Nearen, 135 Tex. 50, 138 S.W.2d 1065; State v. Dayton Lumber Co., 106 Tex. 41, 155 S.W. 1178; Stephens v. Motl, 82 Tex. 81, 18 S.W. 99; Kauffman v. Brown, 83 Tex. 41, 18 S.W. 425; Windsor v. Freeman, Tex.Civ.App., 204 S.W. 780; 41-A Tex.Jur. 530-531.

■■ Ordinarily one claiming under an executory contract of sale should make a tender into court of the unpaid purchase price in order to prevail against his vendor, or a grantee from the vendor. But we do not believe the rule is applicable here because: (1) Under the terms of their contract, appellees (having made their cash payment of $250.00 and gone into immediate possession) were entitled to receive a deed to the property, and were not obligated to begin their monthly payments until "one month after date of deed." The vendor never tendered them a deed. (2) As we have heretofore stated, Eula Sims testified she tried to make payments, but her tender was refused. It is not necessary to make or keep alive a tender which is obviously useless and futile. Benson v. Meacham, Tex.Civ.App., 263 S.W.2d 188; Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509; Young v. Fitts, 138 Tex. 136, 157 S.W.2d 873; Gulf Pipe Line Co. v. Nearen, 135 Tex. 50, 138 S.W.2d 1065; Creager v. Beamer Syndicate, Tex. Civ.App., 274 S.W. 323; White v. Dennis, Tex.Civ.App., 220 S.W. 161; 40 Tex.Jur. 840-841; 43-A Tex.Jur. 263-264.

Appellant's first point on appeal is overruled.

■ Appellant's next point is that the court erred in holding that appellant Farrow had notice of the claim of John and Eula Sims. But there is evidence in the record that prior to the closing of the deal between Farrow and Cora P. Stallings, the attorney for Cora P. Stallings talked to Cora P. Stallings and to a Mr. Thacker, Farrow's agent, and told them about appellees' claim. It is also in the record, and it is undisputed, that before Cora P. Stallings would close the deal with Farrow, she demanded and received from appellant Farrow a written indemnity agreement as follows: "In connection with my purchase from you on this date, individually, and as Independent Executrix of the Estate of E. A. Stallings, Deceased, of certain real property described in two separate deeds—one, a Special Warranty Deed, and the other, a Restricted General Warranty Deed, I here-

by agree that I am taking said property subject to all title defects, encroachments, squatter's and adverse claimants, and that I will indemnify and hold you harmless against any dispute which might arise relative to such matters. I further agree that you shall not be bound as to such matters under your Restricted General Warranty Deed or Special Warranty Deed." To protect Farrow, a reduction of $1,250 was allowed on the total purchase price of $30,000. The deed which Farrow received is a restricted warranty deed. We overrule appellant's second point.

## Second Count

■ The second count involves a strip of land one foot wide which appellant Farrow claims is part of the lot described in the first count, lying along the west side of said lot. Appellees claim the one-foot strip is a part of the adjoining lot, which they own, said strip lying along the east side of their lot. Appellees are Eula Sims and Rosa Pendleton, joined by their husbands; Iva Prothro, married but long separated from her husband who did not join in the suit; and Lucinda Lemmons. The four appellees are sisters.

Appellant Farrow does not claim that the adjoining lot, that owned by the four sisters, was included in his deed. He claims that the one-foot strip in question is a part of the lot described in his deed from Cora P. Stallings, as shown by a survey which he ordered made. (The survey was made without notice to appellees.) The four sisters claim the strip is a part of their lot.

The evidence establishes that the four sisters bought their lot about nineteen years prior to the trial and have ever since been in possession of it, including the one-foot strip in controversy. When appellant Farrow graded the lot involved in the first count, he lowered its elevation two or three feet, including the elevation of the one-foot strip in controversy. As a result a driveway used by appellee became unusable.

Appellant Farrow's one point on appeal is that the court erred in awarding appellees title, possession, and damages of $100 to the one-foot strip.

Appellees did not deraign title from the sovereignty of the soil, or from a common source. However they introduced evidence showing possession over a period of many years. In their petition they pled a statutory trespass to try title, followed by a detailed plea in which they allege their peaceable possession, appellant's trespass, and the resulting damage to their property. We think their pleadings and the evidence are sufficient to support a recovery in a possessory action for disturbing peaceable possession and for damage by a naked trespasser. Pacific Expressway Co. v. Dunn, 81 Tex. 85, 16 S.W. 792; 41-A Tex.Jur. 487.

■ Furthermore under our holding in the first count, appellant did not take title to the property described in his deed from Cora P. Stallings. Under the circumstances here present he is not in position to assert ownership rights, so he cannot prevail in a boundary line dispute with the owners of the adjoining property.

Appellant's third point is overruled.

The judgment of the trial court is affirmed.

## On Motion for Rehearing.

In his motion for rehearing appellant presents the following argument: "If tender before filing suit be excused, certainly still there should at least be a requirement of tender into Court of the unpaid purchase price before the obtaining of title or to make such payment a condition to the awarding of title by the Court. Otherwise, as pointed out, the Appellees obtain the land without ever making payment, which is certainly not just. * * * It is strongly urged here that even if formal payment into Court accompanying the petition be excused, certainly payment should

be required at some stage before title is finally and completely awarded to Appellees."

There might be some merit to appellant's argument if Cora P. Stallings, Independent Executrix of the Estate of E. A. Stallings, deceased, were a party to this suit, and if we were confronted with the question whether it was appellees' duty to keep alive their tender to Cora P. Stallings, Independent Executrix, of payment of the balance due on the purchase price. We held in our original opinion that the contract of sale originally entered into between appellees and E. A. Stallings has not been rescinded. It is still in existence. Whatever rights, if any, the seller may have retained under the contract belong now, so far as the record shows, to Cora P. Stallings, Independent Executrix, not to appellant Farrow. Since Cora P. Stallings, Independent Executrix, is not a party to this suit, we shall not pass on the question whether she, if she had been a party to the suit, could have required appellees to keep alive their tender of the payment of the balance of the purchase price.

Appellant Farrow does not claim under and by virtue of the contract, nor does he admit any obligation under it. The contract was never transferred to him. In fact, he repudiates the contract, contending that it was rescinded. He does not have and cannot fairly claim any rights under the terms of the contract. His claim of title rests solely on the deed from Cora P. Stallings, Independent Executrix, which he accepted with notice of the adverse claim of title by appellees. If appellees still owe a duty to anyone to tender the balance of the purchase price before perfecting their title, that duty is not owed to appellant C. Farrow.

The motion for rehearing is overruled.

## On Second Motion for Rehearing

In their original briefs both appellant and appellees argued fully the question of the right of Cora Stallings, Independent Executrix, to rescind the contract of sale because appellees had not finished payment of the purchase price. However little or no attention was paid in the briefs of the parties to the question whether appellees, before being awarded the legal title, should be required to tender the balance of the purchase price. The latter question has received full treatment for the first time in appellant's second motion for rehearing and appellee's reply brief to said second motion.

In his second motion for rehearing appellant has reminded us of Article 1290, Vernon's Ann.Civ.St., which provides as follows:

"All alienations of real estate, made by any person purporting to pass or assure a greater right or estate than such person may lawfully pass or assure, shall operate as alienations of so much of the right and estate in such lands, tenements or hereditaments as such person might lawfully convey;".

The statute has been applied in a number of cases. Evans v. Graves, Tex.Civ.App., 166 S.W.2d 955; Belote v. Brown Securities Corp., Tex.Civ.App., 129 S.W.2d 395; Rae v. Baker, Tex.Civ.App., 38 S.W.2d 366; Gibbs v. Barkley, Tex.Com.App., 242 S.W. 462; Kennedy v. Pearson, Tex.Civ. App., 109 S.W. 280, 283.

The deed from Cora Stallings, Independent Executrix, to appellant Farrow purported to pass full and complete fee simple title. We think we correctly held that Cora Stallings could not convey full and complete title to Farrow because she had no right to rescind the contract of sale with appellees. However we must hold in the light of the above quoted statute that she did convey to Farrow by her limited warranty deed whatever rights she may have had in the property. The rights she still had when she executed the deed and which she conveyed to Farrow were her

security interest in the payment of the balance of the purchase price.

It follows that we were mistaken when we held in our opinion on first motion for rehearing that if Cora Stallings had been a party to the suit, she might have required a tender of the balance of the purchase price, but that appellant Farrow was not in position to so demand. We have concluded that appellees are entitled to judgment for title and possession of the land involved in the first count of apellees' petition only on condition that appellees tender to appellant Farrow the balance due on the purchase price.

In Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, our Supreme Court, taking into consideration the particular facts shown by the record, held that when a seller rejected a tender of an installment payment, no further tenders were required by the buyer. However the judgment was reversed and remanded with instructions to the trial court to require the buyer to pay the balance due on the purchase price as a condition to be met before rendering judgment for the buyer.

In the case now before us appellant's second motion for rehearing is sustained in part and overruled in part as follows:

(1) The judgment in favor of appellees John Sims and wife Eula Sims for title and possession of the real property described in the first count is reversed and set aside with these instructions to the trial court: (a) if said appellees tender into court for the benefit of appellant Farrow the balance due on the purchase price of the property, judgment shall be entered in favor of appellees for title and possession of the property; but (b) if said appellees fail and refuse to tender into court the balance due on said purchase price, then judgment shall be rendered in favor of appellant Farrow that appellees take nothing by their suit.

(2) The judgment in favor of appellees Eula Sims, joined by her husband John Sims, Rosa Pendleton, joined by her husband Tom Pendleton, Lucinda Lemmons, and Iva Prothro for title and possession of the real property described in the second count is affirmed.